QUESTION:
Does the City of Hialeah have the authority to purchase Hialeah Racetrack?
SUMMARY:
The City of Hialeah has the authority pursuant to AGO's 076-209 and 077-19 and s. 6(8), City of Hialeah Charter, to purchase the Hialeah Race Track.
In AGO's 076-209 and 077-19, I concluded that the city could purchase the track under the terms and restrictions contained in those opinions. I have also been informed that the electors of Hialeah recently approved, by referendum, the purchase of this facility. This fact reaffirms the strength of the referenced opinions.
A copy of the Internal Revenue Service's September 29, 1977, letter of approval has also been submitted. In this letter, the IRS concluded that:
 (1) The loan obtained by City M for the purchase of real property, with Facility Z thereon, qualifies as an obligation issued to finance `sports facilities' as that term is used pursuant to section 103(b)(4)(B) of the Code;
 (2) Since the subject of City M's loan is the financing of an exempt activity, interest payable to the recipient banks on this loan shall not be subject to Federal income tax pursuant to section 103(a)(1) of the Code.
Thus, it is appropriate to ascertain whether this facility may be classified as a `stadium' which is within the ambit of s. 6(8):
 Recreational and cultural institutions. To acquire and maintain and operate, aviation fields, playgrounds, golf courses, swimming pools, stadiums, auditoriums, libraries, aquariums, art museums and other cultural and educational institutions. (Emphasis supplied.)
The Supreme Court of Pennsylvania, in Martin v. City of Philadelphia, 215 A.2d 894, 896 (Penn. 1966), stated, `[a] sports stadium is for the recreation of the public and is hence for a public purpose'; see also Ginsberg v. City and County of Denver,436 P.2d 685, 589 (Colo. 1966). There is a dearth of sources from which to determine, precisely and unequivocally, what may be deemed to be a stadium. I have found no cases from Florida or other jurisdictions containing any discussion of whether a horse racing facility may properly and reasonably be included under the term stadium. However, from the limited sources which are available, I must conclude that the scope of the term is quite broad. Two basic, general elements common to a stadium are emphasized. The first such element is that a stadium is an outdoor structure containing seating for spectators. Steinberg v. Forest Hills Golf Range, 105 N.E.2d 93, 95 (N.Y. 1952); Alexander v. Phillips, 254 P. 1056, 1057-1058 (Ariz. 1927). The second element is that the spectators occupying such a structure do so in order to view athletic or sporting competition in which there are winning and losing contestants. Steinberg v. Forest Hills Golf Range, supra. Both elements appear to be present to the necessary extent with respect to the Hialeah facility.
In Webster's Third New International Dictionary (unabridged), `stadium' is defined as `a large usually unroofed structure with tiers of seats for spectators built in various shapes (as circular or elliptic) and enclosing a field usually used for sports events
(as baseball, football, track and field).' (Emphasis supplied.) In United States v. Pinto, 503 F.2d 718, 724 (2d Cir. 1974), the court considered whether horse racing (in that case, harness racing) qualified as a `sporting contest' for purposes of a federal statute proscribing bribery in sporting contests and defining sporting contest as a contest between `individual contestants.' The court held that such racing does constitute a sporting contest between individuals to the same extent as other events such as football or basketball.
It is my opinion that the Hialeah facility, because of both its physical structure and the nature of the events held therein, may reasonably and properly be labeled as such. Thus, the city's official determination that its power to acquire stadiums allows it to acquire the Hialeah facility is, in my view, reasonable, tenable, and in accord with the above authorities.
Prepared by: Staff